IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTHONY PEREZ HERNANDEZ,

    Plaintiff,                       No. CIV S-07-0252 GEB EFB P

    vs.

JEANNE WOODFORD, et al.,

    Defendants.                  FINDINGS AND RECOMMENDATIONS

_____/

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. He alleges in his February 8, 2007, complaint that: (1) on March 10, 2006, defendant Lebeck refused to open an electronic cell door that had closed on plaintiff and pinned him to the door jamb; and, (2) defendant Malfi knew that defendant Lebeck acted aggressively and recklessly towards prisoners but refused to move Lebeck to a position where he could not jeopardize prisoners' safety. Defendants have moved for summary judgment. For the reasons explained below, the motion must be granted.

**I.    Facts**

At all times relevant to this action, plaintiff was a prisoner at California State Prison, Sacramento ("CSP-Sac.") where the defendants were employed. Defendant J. Lebeck was a guard and defendant Malfi was the warden. Defs.' Mot. for Summ. J., Stmt. of Undisp. Facts in

Supp. Thereof ("SUF"), SUF 3.

Plaintiff was housed in cell number 223 of Building 5 of C-Facility ("Facility C-5") and Lebeck was the Control Booth Officer for that facitility. SUF 3, 4. Facility C-5 is made up of Sections A, B and C. SUF 5. Each section had about 20 cells with two prisoners occupying each cell. *Id*. The Control Booth Officer controlled the cell doors and would open and close individual cell doors with switches on a panel in the control booth. *Id*. Lebeck asserts in his declaration that it is nearly impossible to see cell 223 from the control booth in Facility C-5 because a mirror is positioned so as to block the view. SUF 6. Thus, from his position at the time of the incident, Lebeck could see only the top six inches of the door to plaintiff's cell. *Id*. Plaintiff asserts in a declaration submitted with his opposition that Lebeck could have seen him from the control booth. Pl.'s Opp'n, Exh. A. However, at deposition plaintiff conceded that he did not take the measurements referred to in his declaration. Defs.' Reply, Exh. A ("Pl.'s Dep."), at 37.

The cell doors had certain safety features. Lebeck has submitted the declaration of R. Taylor, the Plant Operations Manager at CSP-Sac, who explains that the cell doors are "electro-mechanical," meaning that while the lock is mechanical, they open and close by means of an electrical drive. Taylor Decl., at ¶ 3. The doors are set so that the pressure when closing will not cause injury to persons or damage to the door's operational mechanism. SUF 14. Further, the doors are designed so that when a closing door makes contact with an object whose force equals the closing pressure of the door, the door will stop. SUF 15. In his declaration, Lebeck asserts that he was aware of these safety features and has seen prisoners stop the doors from closing using their hands and feet. SUF 15; Lebeck Decl., at ¶ 11. It is undisputed that the door has sharp edges, which caught plaintiff in the buttocks and the chest cavity. Pl.'s Dep., at 31.

The prison has an organized procedure for releasing prisoners to the yard. The Control Booth Officer opens a predetermined set of cells, releases the prisoners, and then closes the cell doors. SUF 7. As the officer watches the prisoners leave the block, he begins to open the next

predetermined set of cells. *Id*.

Lebeck followed these procedures on the date in question. Thus, at around 9:45 a.m. on March 10, 2006, defendant Lebeck began the first of three announcements, made at 5-minute intervals, that he would release prisoners to the yard. SUF 8. At about 10:00 a.m., Lebeck opened plaintiff's cell. The parties agree that plaintiff delayed in exiting the cell. SUF 9. Moreover, plaintiff was nearly outside the cell when he reached inside again to get a sweatshirt. *Id*. The door continued to close and plaintiff attempted to go all the way back into his cell, but he did not make it. *Id*. He was pinned between the door and the door jamb. At deposition, plaintiff admitted that when the door hit his chest cavity and torso area, it did not continue to push or crush him. Pl.'s Dep., at 31. Instead, it stopped without hurting his chest. *Id.* He was just stuck. SUF 9.

During this time, defendant Lebeck was observing both the control panel and the prisoners he was releasing to the yard. SUF 10. Plaintiff alleges in the verified complaint and in his declaration that defendant Lebeck made eye contact with plaintiff while the door was closed on him and while he yelled to have the door opened again. Compl., at 4; Pl.'s Opp'n, Exh. B ("Pl.'s Decl."), at ¶ 9. He also asserts, and submits the declarations of two other prisoners asserting, that plaintiff and others were yelling for Lebeck to open the door, and that Lebeck looked in plaintiff's direction and scolded him. Pl.'s Decl., at ¶ 9; Pl.'s Exhs. C, D. Plaintiff submits the declaration of another prisoner stating that he heard plaintiff yelling to Lebeck to open the door because he was caught, that Lebeck responded that plaintiff "should have been ready," and then left plaintiff stuck there until the entire upper tier was released. Pl.'s Exhs. E, F. Defendant Lebeck denies seeing or making eye contact with plaintiff when the door closed on him. SUF 10. Lebeck asserts that about one minute after he had opened and closed plaintiff's cell door, he heard other prisoners yelling that plaintiff was caught in the door of his cell. SUF 11. He asserts that this was the first time he became aware that plaintiff was pinned by the door, and once he knew of the situation he immediately opened the door. *Id*. The parties agree that

3

the entire incident lasted from 60 to 90 seconds. It took about 5 seconds from the time plaintiff's cell door was completely open until the time he was pinned between it and the door jamb. SUF 13. Defendant Lebeck has submitted evidence that when plaintiff's cell door made contact with him, it stopped but that plaintiff was stuck. SUF 16.

Plaintiff's claim that defendant Malfi knew of Lebeck's history of aggression is premised on an allegation that Malfi knew that grievances alleging mistreatment of prisoners had been filed against Lebeck. SUF 20. Plaintiff submits no evidence that defendant Malfi knew anything about the incident with the door around the time it actually occurred.

## II. Evidentiary Objections

Defendants, without citation to authority, object to much of the evidence plaintiff submitted in support of his opposition. Plaintiff's evidence and defendants' objections cannot be divorced from the nature of this proceeding, which in this instance is a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). *See Burch v. Regents of the University of California*, 433 F.Supp.2d 1110, 1118-1124 (E. D. Cal. 2006).[1] That rule provides that the affidavits "shall set forth such facts as would be admissible in evidence . . . ." Fed. R. Civ. P. 56(e). On summary judgment, the non-moving party's evidence need not be in a form that is admissible at trial. *See Burch*, 433 F.Supp.2d at 1119 (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Instead, a court is concerned with the admissibility of the contents of the evidence. *Id.* Thus, on summary judgment, "objections to the *form* in which the evidence is presented are particularly misguided where, as here, they target the non-moving party's evidence." *Id.* at 1119. Accordingly, as long as a party submits evidence which, regardless of its form, may be admissible at trial, it may be considered on summary judgment. *Id.* at 1120.

////

---

[1] As Judge Shubb observed in *Burch*, objecting to every stitch of evidence submitted in opposition to summary judgment has become all the rage.

4

Defendants object that the administrative appeals plaintiff has submitted lack a proper foundation or authentication. In order properly to support or oppose summary judgment, the party relying on affidavits and records must lay a proper foundation. *Beyne v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988). The court agrees that "whether the authentication requirement should be applied to bar evidence when its authenticity is not actually disputed is, however, questionable." *Burch*, 433 F.Supp.2d at 1120. "[W]here the objecting party does not contest the authenticity of the evidence submitted, but nevertheless makes an evidentiary objection based on purely procedural grounds," then the court should consider the evidence. *Id.* In such a situation, it would appear equally probable that the documents are what they purport to be as it is that they are not. *See id.*

Here, defendants do not actually contest the authenticity of the documents plaintiff has submitted. Moreover, all of the documents plaintiff submits would find their source in the prison system, either in plaintiff's files or in the prison bureaucracy. Thus, if there were a valid basis for contesting their authenticity, defendants could unearth and present it. But they have not. Therefore, all defendants' objections for lack of proper foundation and lack of authentication are overruled.

Defendants also object on hearsay grounds. This objection is overruled for two reasons. The first is the form of the objection and the second is the nature of the non-moving party's burden on summary judgment. The objections are *pro forma* in that defendants object to entire documents, not particular statements. An objection based on hearsay inherently is bound to the context in which the allegedly objectionable evidence is offered. *See Burch*, 433 F.Supp.2d at 1122 ("even seemingly appropriate objections based on hearsay and failures to authenticate/lay a foundation are difficult to address away from the dynamics of trial.") Insofar as a letter or record may on its face constitute hearsay, the particular statements upon which plaintiff relies may very well either be admissible nonetheless or may not be hearsay, depending on the purpose for which plaintiff offers the statement. "The court is not inclined to comb through these documents,

5

identify potential hearsay, and determine if an exception applies - all without guidance from the parties." *Id.* at 1124. Thus, to prevail on a hearsay objection, defendants must object to particular statements and explain the objection. Defendants' failure to do so is sufficient basis for overruling the objection.

With respect to the nature of this proceeding, "the court cannot ignore the fact that a non-movant in a summary judgment setting is not attempting to prove its case, but instead seeks only to demonstrate that a question of fact remains for trial." *Burch*, 433 F.Supp.2d at 1121. The court thus "treat[s] the opposing party's papers more indulgently than the moving party's papers." *Id.* (citing *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985)). While a court need not ignore the evidentiary ramifications of a declaration based nearly entirely on hearsay, *see Burch*, 433 F.Supp.2d at 1121 (noting that the Ninth Circuit does not uniformly apply the principle of indulgence), it is worth pointing out that plaintiff proceeds without counsel. Furthermore, he does not rely on evidence which on its face presents evidentiary obstacles which would prove insurmountable at trial. *See id.* at 1122 (noting that at trial, "when a party raises valid evidentiary objections, the opposing party will have an opportunity to present the evidence in an alternative and admissible form."). Insofar as there may be valid hearsay objections, they are better left for trial, if there is to be one.

For these reasons, the defendants' objections to the plaintiff's evidence submitted in opposition to this motion are overruled.

**III.    Summary Judgment Standards**

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it

6

> believes demonstrate the absence of a genuine issue of material fact.

Summary judgment avoids unnecessary trials in cases with no genuinely disputed material facts. *See Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). At issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, Rule 56 serves to screen the latter cases from those which actually require resolution of genuine disputes over material facts; e.g., issues that can only be determined through presentation of testimony at trial such as the credibility of conflicting testimony over facts that make a difference in the outcome. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Focus on where the burden of proof lies as to the issue in question is crucial to summary judgment procedures. "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the opposing party must establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To overcome summary judgment, the opposing party must demonstrate a factual dispute that is both material, i.e. it affects the outcome of the claim under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987). In this regard, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. In attempting to establish the existence of a factual dispute that is genuine, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631.

Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). However, the opposing party must demonstrate with adequate evidence a genuine issue for trial. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1142 (9th Cir. 1989). The opposing party must do so with evidence upon which a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252. If the evidence presented could not support a judgment in the opposing party's favor, there is no genuine issue. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. at 323.

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual

predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

On May 1, 2007, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**IV.  Analysis**

  **A. Plaintiff's Claim Against Lebeck**

Plaintiff's first claim is that Lebeck was deliberately indifferent to plaintiff's basic human needs by failing immediately to open a cell door that closed on plaintiff. Lebeck contends that plaintiff cannot adduce evidence that he knew, or inferred, that plaintiff faced a substantial risk of injury.

The Eighth Amendment prohibits deliberate indifference to conditions of confinement that violate contemporary standards of decency, i.e, those which deny "the minimal civilized measure of life's necessities," or which pose a risk of a harm "that is not one today's society chooses to tolerate." *Rhodes v. Chapman*, 452 U.S. 337 (1981); *Helling v. McKinney*, 509 U.S. 25, 36 (1993); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, the conditions of a prisoner's confinement, even if harsh, must have some legitimate penological purpose. *See Hudson v. Palmer*, 468 U.S. 517, 584 (1984); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Conditions of confinement violate the Eighth Amendment if they cause unnecessary and wanton infliction of pain, i.e., a condition completely devoid of penological justification. *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981); *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991).

However, prison officials violate the Eighth Amendment's prohibition on cruel and unusual punishment only if they exhibit "deliberate indifference." *Farmer*, 511 U.S. at 837. To be deliberately indifferent, a prison official must know of, or infer from the circumstances, a risk of harm or injury that "is not one that today's society chooses to tolerate," yet fail to take reasonable actions to mitigate or eliminate that risk. *Farmer*, 511 U.S. at 837.

Here, it is undisputed that plaintiff got caught in a prison door that was closing when Lebeck was releasing prisoners to the yard. It also is undisputed that plaintiff and other prisoners yelled out in an attempt to alert Lebeck that plaintiff was thus caught. Lebeck has submitted uncontested evidence that the cell doors work similarly to those of an elevator in that they are programmed to close with a certain amount of force and to stop when confronted with sufficient contrary force. This evidence is consistent with plaintiff's admission that when the door struck him, it stopped. Thus, he was pinned between the door and the door jamb, and it is undisputed that this was uncomfortable and upsetting. The parties dispute whether Lebeck made eye contact with plaintiff while plaintiff was caught and yelling for the door to be opened again. Lebeck submits evidence that he could not see plaintiff from his position because a mirror blocked his view of all but the top few inches of the doorway. Plaintiff submits a declaration asserting that he performed various measurements which suggest that Lebeck could see plaintiff. However, as noted above, this directly contradicts his deposition testimony, in which he admitted that he did not himself take the measurements. Someone else did. Ordinarily where a non-moving party's affidavit that would create a genuine dispute for trial directly contradicts earlier deposition testimony, the court will disregard the affidavit. *See Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 544 (9th Cir. 1975) (accepting as true facts non-moving party testified to at deposition and disregarding later sworn statement which contradicted those facts). However, the court finds that plaintiff's affidavit, even if accepted as true, does not create a genuine issue for trial. Whether Lebeck saw or made eye-contact with plaintiff while plaintiff was caught is inapposite. The doors were designed not to inflict undue pain and Lebeck knew

this. Thus, even if he knew of plaintiff's predicament the exact moment plaintiff began to yell for the door to be opened, but merely continued to release the other prisoners while scolding plaintiff for being late leaving the cell, Lebeck's state of mind did not amount to deliberate indifference to a substantial risk of serious harm. Accordingly, plaintiff cannot prove an essential element of his claim against Lebeck. The motion must be granted with respect to Lebeck.

**B. Plaintiff's Claim Against Malfi**

Plaintiff claims that defendant Malfi was deliberately indifferent to plaintiff's basic human needs by permitting Lebeck to continue working where he came into contact with prisoners. Malfi asserts that there is no genuine dispute about whether he personally was involved or had any knowledge that would justify holding him liable for the incident with the door.

A supervisor who did not personally inflict an alleged injury is subject to liability under 42 U.S.C. § 1983 if he (1) caused others to act, or knowingly refused to stop them from acting, knowing or having reasonable cause to know they would inflict injury; (2) approved such conduct and injury after the fact; or (3) so failed to train or control subordinates to avoid such injury as to demonstrate reckless or callous indifference to constitutional injury. *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.1989); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978); *see also*, *Jones v. Williams*, 297 F.3d 930, 937 & fn. 4 (9th Cir. 2002). Here, it is undisputed that defendant Malfi was nowhere near the scene when the door closed on plaintiff. In fact, there is no evidence that this defendant had personal knowledge of where Lubeck was stationed that day. Instead, plaintiff relies solely on the following from the verified complaint:

> On March 10, 2006, Warden Anthony Malfi violated my Eighth Amendment to the United States Constitution by learning of this violation of my rights and failing to do anything to fix the situation

11

> and failed to act to my C.D.C. 602 Inmate Appeal Form. Also by ignoring and failing to react to a safety problem. The warden was aware of Officer J. Lebeck's aggressive and reckless misconduct towards inmates prior to this violation and refusal to move Lebeck to a possition [sic] were [sic] he could no longer jepardize [sic] the safety of the inmates amounted to 'deliberate indifference' and resaulted [sic] in Officer Lebeck substantially injuring the plaintiff in this matter. Warden Anthony Malfi was legally responsible for the operation of new Folsom Prison and the welfare of all the inmates of this prison at the time the violation occurred and at all times "acted under color of state law."

Compl., at 5. Insofar as plaintiff suggests that Malfi learned of the incident through the grievance process but failed to take any action against Lebeck, he relies solely on Malfi's role as supervisor, which is insufficient as a matter of law to confer liability. Insofar as he suggests that Lebeck had a pattern and practice of abusing prisoners such that maintaining him in any position where he would have contact with prisoners would constitute deliberate indifference, plaintiff fails to allege sufficient details. Even accepting as true that Malfi knew Lebeck in the past had exhibited "aggressive and reckless misconduct" towards other prisoners, this is insufficient to withstand defendants' motion. In order to find that Malfi was deliberately indifferent to prisoners' safety by permitting Lebeck to work around prisoners, there must be evidence of Lebeck's conduct. That prisoners filed grievances is not enough. Plaintiff offers no evidence of Lebeck's prior conduct or Malfi's knowledge of it. Accordingly, there is no genuine dispute for trial. Malfi's motion must be granted.

**IV. Conclusion**

Plaintiff fails to satisfy his burden on summary judgment. With respect to his claim against Lebeck, there is no genuine dispute about whether defendant Lebeck knew or inferred a substantial risk of serious harm when the cell door closed on plaintiff. Furthermore, plaintiff has submitted no evidence that defendant Malfi knew or inferred that Lebeck was so dangerous to prisoners that it essentially repudiated the Constitution to permit him to have contact with prisoners. Thus, there is no genuine issue for trial on plaintiff's claims. Accordingly, defendants' motion must be granted.

Accordingly, it is hereby RECOMMENDED that defendants' January 31, 2008, motion for summary judgment be granted and that judgment be entered in their favor.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 12, 2009.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE